# CILENTI & COOPER, PLLC

ATTORNEYS AT LAW
10 Grand Central
155 East 44th Street – 6th Floor
New York, New York 10017

Telephone (212) 209-3933
Facsimile (212) 209-7102

November 13, 2019

**BY ECF**

Hon. Sarah Netburn, U.S.M.J
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

                **Re:**    *Pazaran v. 10th Avenue Group, Inc., et al.*
                          <u>*Case No. 18-CV-9335 (SN)*</u>

Dear Judge Netburn,

      We are counsel to the plaintiff in the above-referenced matter, and jointly submit this letter with defense counsel for the Court's assessment and approval of the settlement agreement ("Agreement") reached between the parties. The Agreement is being submitted contemporaneously with this letter, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this matter, negotiated at arm's length between experienced counsel.

## I.  *The Need for the Court's Approval of the Agreement*

      As plaintiff's action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See also D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

## II.     The Parties

### a.     Defendants

Defendants own and operate a restaurant doing business as "44 & X," located at 622 10th Avenue, New York, New York (the "Restaurant").

### b.     Plaintiff

Plaintiff, Felix Pazaran, alleges that he is a former employee of the Restaurant, and that he was hired in or about 2008 to work as a dishwasher. According to Mr. Pazaran, he was promoted to the position of overnight porter in or about 2012, and maintained that position until his employment came to an end in or about September 2018.

During the relevant limitations period, plaintiff alleges that he worked approximately seven (7) days per week, and that his work shift consisted of eight (8) to nine (9) hours per day from 9:00 p.m. until 5:00 a.m. or 6:00 a.m. Thus, plaintiff alleges working between fifty-six (56) and sixty-three (63) hours per week. With respect to his pay, plaintiff alleges that he was always paid on a salary basis, straight time for all hours worked. More specifically, he alleges being paid $870 per week, except for the last three (3) months, during which time he was paid $900 per week.

## III.    Defendants' Defenses/Positions

Defendants dispute Plaintiff's allegations, and contend that it has complied with the FLSA and the NYLL. Furthermore, Defendants dispute the hours Plaintiff claims to have worked each week and claim that his hours rarely exceeded 6 hours per day. He regularly arrived between 9:30 p.m. to 10:30 p.m. and left between 3:30 a.m. to 4:00 a.m.

### a.     *Plaintiff Was An Independent Contractor*

According to the defendants, plaintiff was not an employee of the Restaurant. Instead, it is the defendants' contention that plaintiff was an independent contractor that was retained to perform cleaning services. Defendants paid the majority of plaintiff's wages by check, and they point to the fact that the checks were made payable to "Felix Pazaran Bonilla Cleaners," as evidence of their positions.

Plaintiff disputes being an independent contractor. Mr. Pazaran did not own his own business and, according to him, was promoted to the position of overnight porter as a replacement for the prior porter. Although plaintiff believes that the defendants would not have been able to substantiate their affirmative defense that he was an independent contractor, it did present a factual dispute and significant litigation risk because if the defendants were proven correct, it would have extinguished plaintiff's claims.

### b. *Plaintiff Did Not Work Over 40 Hours*

As mentioned above, even if considered an employee, the defendants argue that plaintiff did not sustain any damages because he did not work in excess of forty (40) hours per week. During the course of discovery, the defendants produced affidavits from plaintiff's co-workers attesting that plaintiff would enter the Restaurant around 10:30 p.m. One of those employees affirmed that he typically arrives around 6:00 a.m., and as early as 4:30 a.m. during holidays, and never saw plaintiff working when they arrived. Defendants contend that plaintiff worked about five (5) hours per night between 10:00 p.m. and 3:00 a.m., thereby working approximately thirty-five (35) hours per week.

Although plaintiff disputes the defendants' position, this posed a more troubling triable dispute. Mr. Pazaran work the overnight shift, the majority of which he was alone inside the Restaurant. And, because Mr. Pazaran did not punch a time clock, the issue as to the number of hours plaintiff worked would have come down solely to testimonial evidence for the trier of fact to decipher.

### IV. *Plaintiff's Calculated Damages*

Plaintiff calculated that he is owed approximately $197,000 in unpaid overtime compensation, with an equal amount in liquidated damages. Defendants maintain that plaintiff is not entitled to any damages.

### V. *Settlement Amount*

As reflected in the attached Agreement, the parties have agreed to settle the case for a total of $42,500 to resolve all of plaintiff's wage and hour claims against the defendants, payable in nine (9) installments commencing within fourteen (14) days after the Court approves the terms of the settlement and dismisses the action with prejudice. We believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about plaintiff's claims and the evidence on the record.

### VI. *The Agreement is Fair and Reasonable*

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.*, 900 F. Supp.2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, supra,* 679 F.2d at 1354)); *see also In re Penthouse Executive Club Compensation Litig.*, No. 10 Civ. 1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

Hon. Sarah Netburn, U.S.M.J
November 13, 2019
Page 4

Here, it is undisputed that this settlement did not result because of "overreaching" by the employer. To the contrary, the settlement was reached after mediation as a result of extensive arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Apr. 13, 2013). In light of various disputes discussed above, the parties believe the settlement enables them to avoid the risks inherent in any trial and should be approved.

### VII.    *Application for Attorneys' Fees*

Pursuant to this firm's retainer agreement with plaintiff, our firm will retain one-third the net proceeds of the settlement after the firm's costs ($665 for filing fee and service). Therefore, plaintiff's counsel seeks $13,943.60 in fees, and $665 in costs for a total application of $14,608.60, which is below the firm's lodestar. Attorneys' fees in FLSA settlements are examined to ensure that the interests of plaintiff's counsel in his own compensation did not adversely affect the extent of the relief counsel procured for the clients. *See Wolinsky v. Scholastic*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012). In this case, plaintiff's counsel fee of one-third is reasonable. Of course, had the case proceeded, assuming plaintiff prevailed, plaintiff's counsel would have made a fee application for much more than the amount currently sought in fees.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, many courts have recognized the "percentage of the fund" method as an appropriate means by which to compensation plaintiff's attorneys in FLSA settlements. *See Velasquez v. Digital Page*, No. 11 Civ. 3892, 2016 U.S. Dist. LEXIS 84554, at *4 (E.D.N.Y. June 28, 2016) (applying one-third of percentage of fund method in approving settlement); *see also Hiang v. Chiang*, No. 16 Civ. 1129, 2016 U.S. Dist. LEXIS 142670, at *7-8 (S.D.N.Y. Oct. 14, 2016) (awarding attorneys' fees of one-third of settlement amount in FLSA case); *Chauca v. Abitino's Pizza 49th St. Corp.*, No. 15 Civ. 6278, 2016 U.S. Dist. LEXIS 86206, at *6 (S.D.N.Y. June 29, 2016) (awarding attorneys' fees in amount of one-third of gross settlement); *Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) (when using the "percentage of the fund" approach, "courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234, 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one-third of the FLSA settlement amount); *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp. 2d 337, 340-41 (S.D.N.Y. 2012) ("a fee that is one-third of the fund is typical" in FLSA cases).

For all of the reasons set forth above, the parties request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal that is being submitted

Hon. Sarah Netburn, U.S.M.J
November 13, 2019
Page 5

simultaneously herewith, which expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

We thank the Court for its continued attention to this matter.

Respectfully submitted,

Justin Cilenti

cc: Ken Maeng, Esq. (by ECF)